UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROW ART MANAGEMENT, LLC,

    Plaintiff,

                                                    Civil Case No. 23-11434

v.                                 Honorable Linda V. Parker

IDOL EYES FRANCHISE, LLC *et al.*,

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 6)

This is a diversity action arising from former employees' purported breaches of restrictive covenants in their employment contracts with Plaintiff regarding eyebrow threading services. This matter is presently before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Complaint (ECF No. 6). The motion is fully briefed. (ECF Nos. 6, 15, 17). For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND & PROCEDURAL HISTORY

Plaintiff Brow Art Management, LLC, ("Plaintiff") is a direct provider and franchisor of beauty and skincare services, including eyebrow threading. (ECF No. 1 ¶ 16.) Plaintiff also maintains a uniform business model, which uses specially designed operations and equipment. (*Id.* ¶ 18.) Defendants Anas Sullaka, Lina

1

Hirmuz, and Manal Hassan (collectively, "Defendant Employees") were employed by Plaintiff as eyebrow threaders. (*Id.* ¶ 38.)

Nondisclosure/Non-Competition Agreements

In 2011, Defendant Hassan executed a nondisclosure and non-competition agreement with Perfect Brow Florida, Inc. ("PBF"), when she was originally hired by PBF. (Hassan Agreement, Ex. 1, ECF No. 1-1.) The same year, Defendant Hirmuz executed a similar agreement with PBF to work as an eyebrow threader. (Hirmuz Agreement, Ex. 2, ECF No. 1-2.) On June 23, 2015, Defendant Sullaka executed a nondisclosure and non-competition agreement with Perfect Brow Art, Inc. ("PBA") in connection with her employment as an eyebrow threader. (Sullaka Agreement, Ex. 3, ECF No. 1-3.) PBF and PBA also conducted business under the name "Brow Art 23."

On April 30, 2013, Perfect Brow Oakland, Inc., ("PBO") which is an affiliate of PBF and PBA, entered into a lease agreement to lease a kiosk located in Oakland Mall at 412 W. 14 Mile Road, Troy, MI 48083. (ECF No. 1 ¶ 31.) Upon execution of the Agreements, Defendant Employees began working at this location. (*Id.* ¶¶ 32-33.)

Asset Purchase Agreement

On July 30, 2019, Plaintiff entered into an Asset Purchase Agreement ("Purchase Agreement") with PBA, PBF, PBO, and other affiliates ("Seller Entities"). (Ex. 4, ECF No. 1-4.) Pursuant to the Purchase Agreement, Plaintiff

2

purchased all of the rights, title, and interest in the Seller Entities' assets. According to Plaintiff, the purchased assets included "all of the Seller Entities' customer records and ***certain assumed contracts and leases***, including without limitation, the Oakland Lease for the Oakland Kiosk Location." (ECF No. 1 ¶ 36, at PageID. 15 (emphasis added); ECF No. 1-6 at PageID. 97.)

Defendants' Alleged Violations

In September of 2019, Plaintiff assumed the Oakland Kiosk location pursuant to terms of the Purchase Agreement that included the Oakland Lease Agreement, which was set to expire on May 31, 2023. (ECF No. 1 at PageID. ¶ 38.) Defendant Employees remained employed with Plaintiff. (*Id.*) On March 12, 2023, Neha D. Matiwala, a Regional Manager for Plaintiff, checked the video camera footage of the Oakland Kiosk location from March 11. (*Id.* ¶ 46.) Ms. Matiwala noticed a man who was later identified as Mario Kiezi—the owner of Oakland Mall—speaking with Defendant Employees and showing them images from his phone. (*Id.* ¶ 47.)

After a conference between Defendant Employees, along with Ms. Matiwala, Khalida Safi, Plaintiff's Director of Operations, Brijesh Patel, Plaintiff's Owner, and Vinesh Darji, Plaintiff's CEO (collectively, "Plaintiff's Management"), it was revealed that Mr. Kiezi informed Defendant Employees that he wanted them to provide eyebrow threading services at a store that would soon open within the mall. (*Id.* ¶¶ 57-59.)

On April 18, 2023, Defendant Employees and Plaintiff's Management held

another conference where Defendant Employees were notified that the Oakland Kiosk location would close on May 31, 2023, and that Oakland Mall decided to not renew Plaintiff's lease. (*Id.* ¶¶ 61-63.) Additionally, Plaintiff's Management notified Defendant Employees that Plaintiff planned to open a new location within a three- minute walk from Oakland Mall at 510 West 14 Mile Road, Troy, MI. (*Id.* ¶¶ 61-63.)

On May 16, 2023, Plaintiff's Management held another conference with Defendant Employees. (*Id.* ¶ 83.) Defendant Hassan notified Plaintiff that she could not work for Plaintiff after May 31, 2023, because she would be traveling out of the country and spending time with her family. (*Id.* ¶ 84.) Defendant Hirmuz notified Plaintiff that she would not work for Plaintiff after May 31, 2023, without providing an explanation. (*Id.* ¶ 85.) Defendant Sullaka notified Plaintiff that she could not work for Plaintiff after May 31, 2023, because she was hired by a clothing store in the Oakland Mall. (*Id.* ¶ 86.) Although Plaintiff offered to increase Defendant Employees' compensation, they declined to continue their employment with Plaintiff. (*Id.* ¶ 87.)

On May 20, 2023, Abdul Al Saeed, Regional Manager for Plaintiff, visited the Oakland Mall and recruited three (3) customers to engage in surveillance of services of Defendant Employees at the Oakland Kiosk location. (*Id.* ¶¶ 93-94.) During the customers' appointments, Defendant Employees conveyed that Plaintiff would be closing its Oakland Mall location, but a new threading company would be opening

4

nearby inside of the mall. (*Id.* ¶ 97.) Defendant Employees also conveyed that the customers should go to the new eyebrow threading company inside the mall, and that Defendant Employees would service them at the new business. (*Id.*) On May 27, Defendants Hirmuz and Sullaka quit working for Plaintiff, followed by Defendant Hassan on May 29. (*Id.* ¶ 103.)

On June 1, 2023, Mr. Saeed noticed a sign at the entrance of the Oakland Mall advertising a competitor in the eyebrow threading business, SAAS Brow, which is owned by Defendant Idol Eyes Franchise, LLC, ("Defendant SAAS") and Defendant Elizabeth Porikos-Gorgees ("Defendant EPG") (collectively, "Defendants"). (*Id.* ¶ 113.) On June 2, 2023, Ms. Safi, Plaintiff's Director of Operations, visited SAAS Brow's Oakland Mall location. Upon entry, she observed the following:

> (i) a brown brow cake, which was the same as used by Brow Art at its Oakland Kiosk Location, and, on the top of the brown brow cake, where Brow Art's name would normally appear, was written 'SAAS;' (ii) green and blue thread that Brow Art used at its Oakland Kiosk Location, which was clearly pre-used; and (iii) threading tools, accessories and skincare products that were exactly the same as those used by Brow Art at its Oakland Kiosk Location.

(*Id.* ¶ 122.) Shortly after, Defendant Hirmuz appeared from the back of the location, followed by Defendant Hassan. (*Id.* ¶¶ 123-24.) On June 3, an employee at the SAAS Oakland location, Aptasam—sister of Defendant Sullaka—confirmed that Defendant Sullaka was also employed by SAAS. (*Id.* ¶¶ 125-26.)

On June 5, 2023, Plaintiff's counsel sent letters to Defendant Employees, notifying them of the alleged violations of their "fiduciary duties and contractual

5

obligations," and demanding that they "cease and desist their violations." (ECF No. 1-14.)  On the same day, Plaintiff's counsel also forwarded letters to Defendant SAAS and Defendant EPG "notifying [Porikos-Gorgees] of Defendants' tortious conduct, reminding [Porikos-Gorgees] of Defendant Employees' fiduciary duties and contractual obligations to Brow Art and demanding that EPG and SAAS cease and desist their tortious conduct." (*Id.* at PageID. 271–72.)  None of the Defendants responded to the letters.  On June 15, 2023, Plaintiff's counsel followed up with emails to Defendant Employees. (ECF No. 1-16.)

On June 16, 2023, Plaintiff filed the instant lawsuit alleging: (I) breach of contract; (II) injunction; (III) tortious interference with a prospective business advantage; (IV) tortious interference with contracts; (V) breach of fiduciary duty; (VI) unjust enrichment; (VII) civil conspiracy; and (VIII) declaratory judgment.

On June 19, 2023, Plaintiff moved for a preliminary injunction. (ECF No. 3.)  On July 20, 2023, the Court issued an Opinion and Order granting in part and denying in part Plaintiff's motion for a preliminary injunction. (ECF No. 13.)  The Court found that Plaintiff demonstrated a likelihood of success on the merits on Count III – tortious interference with prospective business advantage claims. (*Id.* at PageID. 937.)  Defendants now move to dismiss all of Plaintiff's claims except for Count VI – Unjust Enrichment pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

6

## STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## ANALYSIS

### A. Injunctive & Declaratory Relief (Counts II & VIII)

Plaintiff's second claim seeks injunctive relief against all Defendants. (ECF No. 1 at PageID. 36.) Plaintiff's eighth claim seeks declaratory relief against all Defendants. (*Id.* at PageID. 44-45.) "An injunction is a form of equitable relief to

8

avoid irreparable injury. It is not a claim unto itself." *Baglama v. MWV Consumer and Office Prods.*, No. 13–276, 2014 WL 5768577, at *5 (S.D. Ohio Nov. 5, 2014) (citing *Catanzaro v. Mich. Dep't of Corr.*, No. 09-2, 2010 WL 2349051, at *1 (W.D. Mich. Apr. 15, 2010)). Additionally, it is well-settled that "[d]eclaratory relief is a remedy . . . not a claim." *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012) (quoting *Mettler Walloon, L.L.C. v. Melrose Twp.*, 761 N.W.2d 293, 317 (Mich. Ct. App. 2008)).

While Plaintiff may be entitled to declaratory or injunctive relief as a remedy for other claims, Plaintiff's Count II and Count VIII fail as a matter of law and must be dismissed as they are forms of relief, not claims for which relief could be granted.

B. Breach of Contract & Tortious Interference with Contracts (Counts I & IV)

Plaintiff asserts a breach of contract claim against the Defendant Employees and a tortious interference with contract claim against Defendants EPG and SAAS. (ECF No. 1 at PageID. 33, 39.) In Michigan, to state a claim for breach of contract, a party must establish, among other things, the existence of a valid contract between the parties. *See Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 954-55 (E.D. Mich. 2014) (citation omitted) ("A party claiming a breach of contract must establish . . . (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages.").

Similarly, to state a claim for tortious interference with contract, a plaintiff must also establish the existence of a contract. *See also Thill*, 8 F. Supp. 3d at 955

9

(quotations omitted) ("[T]he elements of tortious interference are (1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant. . . . [A] plaintiff must [also] allege the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purposes of invading plaintiff's contractual rights.").

When deciding the motion for preliminary injunction, the Court found that Plaintiff was not likely to succeed on the merits of the breach of contract claim given that the Purchase Agreement did not include the Employment Agreements at issue and Plaintiff did not assume the contractual rights. (*See* ECF No. 13 at PageID. 962) ("[T]he Purchase Agreement provides a list of what contracts are assumed by Plaintiff, which does not appear to include the restrictive covenants (Employment Agreements).")

Plaintiff argues that it is the successor to PBF and Defendant Employees continued their employment uninterrupted, and therefore, the Plaintiff was vested with the rights and duties of PBF through the Purchase Agreement. (ECF No. 15 at PageID. 1001.) Plaintiff further argues that Defendants' assertion of contrary facts must be disregarded where the facts plead in Plaintiff's Complaint must be accepted as true and all inferences should be drawn in favor of Plaintiff. (*Id.* at PageID. 1002.) Lastly, Plaintiff argues that Defendants maliciously and intentionally interfered with the Employment Agreements causing breach for the improper purpose of obtaining a benefit in stealing Plaintiff's customers and damage to

Plaintiff's client goodwill. (*Id.* at PageID. 1004.)

First, with respect to Plaintiff's argument that it was the successor to the contract via the Purchase Agreement, the Court previously held, in deciding the motion for preliminary injunction, that Plaintiff failed to establish that it assumed the contracts that it disputes. (*See* ECF No. 13 at PageID. 963-64 ("[T]here appears to be no valid restrictive covenants between Plaintiff and Defendants.").) Therefore, both counts lack a necessary element to state a claim, namely, the element of a valid contract.

With respect to Plaintiff's argument that the Court should disregard Defendants' arguments about the existence or validity of a contract, the existence and validity of a contract is a legal conclusion not a fact. *See MAO-MSO Recover II, LLC v. Boehringer Ingelheim Pharm.*, 281 F. Supp. 3d 1278, 1283 (S.D. Fla. 2017). While the Court must accept well-pleaded factual allegations of the complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Because Plaintiff has failed to adequately assert that a contract existed between itself and Defendant Employees and Defendants SAAS and EPG, Plaintiff's breach of contract and tortious interference with contract claims must be dismissed.

### C. Tortious Interference with a Prospective Business Advantage (Relationship or Expectancy) (Count III)

Plaintiff asserts tortious interference with a prospective business advantage against all Defendants. Under Michigan law, to prevail on a claim of a tortious interference with a business relationship or expectancy, a plaintiff must prove the following:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Courser v. Allard*, 969 F.3d 604, 620–21 (6th Cir. 2020) (citing *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005)).

Moreover, "[o]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Adamo Demolition Co. v. Int'l Union of Operating Eng'rs Local 150*, 3 F.4th 866, 874 (6th Cir. 2021) (citation omitted). The Court previously held that this element was satisfied based upon the complaint and supporting documents. (ECF No. 13 at PageID. 966.) The Court stated the following:

12

>First, Plaintiff alleges that Defendant had access to customer lists and information and may potentially be using the information to obtain clients. Next, Plaintiff, through an affidavit by Mr. Saeed, alleges that he asked customers to obtain eyebrow services by Defendant Employees and record the interaction. At such time, Defendant Employees notified the customers that Plaintiff's business would be closing at the Oakland Kiosk Location but that a new business offering eyebrow threading services (SAAS) would be opening up the following month. Importantly, [Defendant Employees] then allegedly conveyed that they would be working at SAAS and that Defendant Employees would service the customers at SAAS.

(*Id.* (citing ECF No. 3-8 ¶¶ 27–34)). The Court concluded that the facts, as alleged by Plaintiff, along with any evidence from future discovery, supported a finding that Plaintiff has a likelihood of success on the merits for a tortious interference with a business advantage claim. (*See id.* at PageID. 966-67.)

Defendants argue that this claim fails for two reasons: (1) the restrictive covenants at issue are not applicable; and (2) the claims are barred by Michigan's 'economic loss doctrine.' (ECF No. 6 at PageID. 585.) Defendants first argument fails because a valid business relationship, not a contract, is a necessary element of this claim. *See Egyptian European Pharm. Indus. v. Day*, No. 20-13409, 2021 WL 4593956, at *8 (E.D. Mich. Oct. 6, 2021) (citing *Health Call of Detroit*, 706 N.W.2d at 848–49) ("Tortious interference with a business relationship requires the existence of a valid business relationship that is not necessarily predicated on an enforceable contract.").

Turning to the 'economic loss doctrine,' this is a "judicially created doctrine" that prohibits a party to a contract from bringing tort claims that are factually

13

indistinguishable from breach of contract claims. *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 240 (6th Cir. 1994). "The doctrine draws a line between breach of contract claims arising from commercial transactions, where commercial and contract law protect the parties' economic expectations, and tort actions intended to remedy unanticipated injuries as a result of conduct that violates a separate legal duty apart from the contract." *Atlas Tech., LLC v. Levine*, 268 F. Supp. 3d 950, 963 (E.D. Mich. 2017). The 'economic loss doctrine' "prevents contract law from drowning in a sea of tort law." *Am. Imp.-Exp. of Goods, LLC v. World of Colors, LLP*, No. 08–14912, 2010 WL 3974846, at *4 (E.D. Mich. Oct. 8, 2010) (internal citation and alteration omitted).

Plaintiff's tortious interference claim rises from Defendant Employees' interference with the business relationship with Plaintiff's customers. Because there is no contract between Plaintiff and its customers, traditional contract principles do not apply to Defendant Employees' alleged interference with Plaintiff and the business relationship with its customers. Accordingly, the 'economic loss doctrine' is inapplicable.

Moreover, Plaintiff has adequately stated a claim for tortious interference with a business relationship. Plaintiff established that it has a business relationship with its customers, and Defendants both knew of the relationship and attempted to interfere with it by directing Plaintiff's customers to Defendants' business while employed by Plaintiff, resulting in damage to Plaintiff's relationship with its

14

customers, loss of revenue and profit and client goodwill. Defendants' request to dismiss Count III is therefore denied.

### D. Breach of Fiduciary Duty (Count V)

Plaintiff brings a claim of breach of fiduciary duty against the Defendant Employees. "The elements of a [breach of] fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages." *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016) (citation omitted). "Under Michigan law, 'a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another.'" *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 765–66 (6th Cir. 2012) (quoting *Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999)).

Courts have traditionally recognized the following as fiduciary relationships: trustees to beneficiaries, guardians to wards, attorneys to clients, and doctors to patients. *Id.* "The general rule is that the employer-employee relationship does not give rise to a fiduciary relationship unless the employee is a high-level employee, or if there is a specific agency relationship." *Id.* (quoting *Stryker Corp. v. Ridgeway*, No. 13-1066, 2015 WL 8759220, at *3 (W.D. Mich. Dec. 14, 2015)); *see also Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir. 2012) (citation and emphasis omitted) ("Michigan law respects the basic principal that the directors of a corporation owe fiduciary duty to stockholders."); *Broad-Ocean Tech., LLC v.*

15

*Lei*, 649 F. Supp. 3d 584, 597 (E.D. Mich. 2023) ("Under Michigan law, mid-level employees generally do not owe fiduciary duties to their employers unless their employer places them in a position where they are responsible for strategic plans or operations or where they are serving as their employer's agent.").

Plaintiff's complaint does not allege that Defendant Employees are 'high-level' employees. The complaint alleges that each of the Defendant Employees were hired to work as eyebrow threaders for the Oakland Mall location. (ECF No. 1 at PageID. 9-10 ¶¶ 25-27.) No such fiduciary duty would attach to Defendant Employees in the course of their employment with Plaintiff. As a result, Plaintiff has failed to establish a necessary element of this claim. Therefore, it must be dismissed.

### E. Civil Conspiracy (Count VII)

Plaintiff brings a claim of civil conspiracy against all Defendants. "In Michigan, a claim for civil conspiracy requires a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Mapal, Inc. v. Atarsia*, 147 F. Supp. 3d 670, 684 (E.D. Mich. 2015) (quotation omitted). "[T]he plaintiff must show that 'there is a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.'" *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

Notably though, "[c]ivil conspiracy is not a claim of its own; it is necessary to prove a separate, actionable tort." *Detroit Will Breathe v. City of Detroit*, 524 F. Supp. 3d 704, 709 (E.D. Mich. 2021) (quotation omitted). Plaintiff's Count III – Tortious Interference with Business Relations claim is the only tort claim remaining for which this claim could survive.[1]

Importantly, Defendants do not dispute whether Plaintiff has met the elements. (ECF No. 6 at PageID. 587-88.) Defendants argue that they are protected by the 'intracorpoate conspiracy doctrine.' The 'intracorporate conspiracy doctrine' presents a defense to conspiracy claims where members of the same collective entity are alleged to have engaged in a conspiracy. *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). This is because a corporation "cannot conspire with its own agents or employees." *Id.*

Plaintiff argues that its civil conspiracy claim is cognizable under the 'independent personal stake' exception to the 'intracorporate conspiracy doctrine.' Under the 'independent personal stake' exception, "a conspiracy can exist [among a corporation and its agents and employees] when the employee has an independent personal stake in achieving the object of the conspiracy." *Nurse Midwifery Ass'n v.*

---

[1] Defendants did not move to dismiss Count VI - Unjust Enrichment. Unjust enrichment, however, is an equitable claim, not a tort claim. *Roche Diagnostics Corp. v. Shaya*, 427 F. Supp. 3d 905, 924 (E.D. Mich. 2019) (citing *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 657 (Mich. Ct App. 2017)).

17

*Hibbett*, 918 F.2d 605, 613 (6th Cir. 1990) (alteration added); *see also State Farm Mutual Ins. Co. v. Elite Health Ctrs.*, No. 16-13040, 2017 WL 877396, at *7 n.2 (E.D. Mich. Mar. 6, 2017) (alteration added) (quoting *Blair v. Checker Cab Co.*, 558 N.W.2d 439, 442 (Mich. Ct. App. 1996)) ("[T]his doctrine does not apply 'where the directors have an independent stake in the action.'").

Plaintiff argues that Defendant EPG had an independent, personal stake in the conduct and conspired both with Defendant SAAS and Defendant Employees to steal Plaintiff's customers and damage Plaintiff's goodwill. (ECF No. 15 at PageID. 1007.) Defendants seem to concede this claim as they did not rebut this argument on reply. (*See generally* ECF No. 17.)

The Court finds these claims plausible as plead. Plaintiff has stated that Defendants conspired to tortiously interfere with the business relationship Plaintiff had with its customers. (ECF No. 1 at PageID. 44 ¶ 174.) It further argues that Defendant EPG had a personal stake and conspired with the other Defendants to achieve that outcome. Specifically, Plaintiff alleges that Defendant EPG conspired with its directors and Defendant Employees to direct customers away from Plaintiff's business to their own, resulting in damages. (*Id.* ¶¶ 59, 60, 97, 174.) Defendant doesn't present facts contrary to these contentions, either on its own motion or on reply. As a result, the 'independent personal stake' exception to the 'intracorporate conspiracy doctrine' applies. Defendants' request to dismiss Plaintiff's civil conspiracy claim is denied.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' partial motion to dismiss (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Counts I, II, IV, V, and VIII are **DISMISSED** against all Defendants.

**IT IS FURTHER ORDERED** that Counts III, VI, and VII will proceed.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 29, 2024